[No. 9940-7-III.   Division Three.   May 17, 1990.]

KAISER ALUMINUM & CHEMICAL CORPORATION, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, ET AL, *Respondents.*

*Stanley D. Moore, Michael Cronin,* and *Winston & Cashatt,* for appellant.

*Thomas Doran,* for respondents.

MUNSON, C.J.—Kaiser Aluminum & Chemical Corporation appeals the trial court judgment affirming the Board of Industrial Insurance Appeals' (Board) order which held Kaiser failed to timely file a letter of protest to an adverse order by the Department of Labor and Industries (Department), thus the order was final and binding. Kaiser contends the court erred in (1) finding Kaiser failed to meet its burden of establishing a timely filing, and (2) awarding Mr. Kelp attorney fees.

On November 19, 1984, Daniel Kelp submitted a claim for workers' compensation benefits for an asthma condition allegedly contracted as a result of his work in the pot rooms at Kaiser. The Department allowed the claim and by order dated September 9, 1985, directed Kaiser, a self–insured employer, to accept responsibility for the recurrence of Mr. Kelp's asthma condition and pay time loss compensation.

On January 3, 1986, Rick Stuart, claims supervisor for the company servicing Kaiser's self–insured workers' compensation accounts, sent a letter to the Department with two attached letters of protest to the September 9, 1985, Department order and allegedly mailed on October 25 and November 8, 1985. The Department responded by letter dated January 8, 1986, that it had not received the letters of protest and that the Department order was final and

binding. Kaiser filed a notice of appeal with the Board, which was granted subject to proof of timeliness.

An administrative hearing was conducted on the issue of timely filing per RCW 51.52.050, which requires an aggrieved party to file a protest within 60 days of receipt of an adverse order. Kaiser presented the testimony of Mr. Stuart, who wrote the protest letters on October 25 and November 8, 1985, respectively, and placed them in his out basket for mailing. He testified this was the customary procedure for his office, but was unable to affirm on personal knowledge that his secretary or any employee actually picked up the letters that day and placed them in the mailbox. No other witnesses from his office were called to testify.

Mr. Kelp presented witnesses from the Department's self–insured section. They testified the October 25 and November 8, 1985, letters had not been received.[1] They did acknowledge, however, that the Department has had similar complaints of lost letters and that during this period they changed the location of their offices.

The Industrial Appeals Judge entered a proposed decision and order affirming the September 9, 1985, Department order. The Board granted Kaiser's petition for review and entered a decision and order concluding Kaiser's protests were not timely filed; the Department order was affirmed. Kaiser then appealed to the Superior Court which, following de novo review, affirmed the Board order. Upon entry of judgment, the court awarded Mr. Kelp $2,000 in attorney fees. Kaiser appeals.

■ First, Kaiser contends the court erred in finding its letters of protest were untimely, thus rendering the order

---

[1] Hermine Todd, the claims consultant for the Department's self–insured section who worked on Mr. Kelp's claim, testified the Department file did contain a copy of Mr. Stuart's December 16, 1985, letter with a stamp date of December 30, 1986. He noted the year on the stamp date was incorrect since he saw the letter prior to that date. Thus, he assumes the correct date of receipt was December 30, 1985. We note, however, this letter is not one of the protest letters but only references those letters.

final and binding. Review in workers' compensation cases is governed by RCW 51.52.140. The appellate court determines whether the court's findings of fact to which error is assigned are supported by substantial evidence and whether its conclusions of law flow therefrom. *Department of Labor & Indus. v. Moser,* 35 Wn. App. 204, 208–09, 665 P.2d 926 (1983); *Lloyd's of Yakima Floor Ctr. v. Department of Labor & Indus.,* 33 Wn. App. 745, 748, 662 P.2d 391 (1982).

RCW 51.52.050[2] provides that an employer seeking to appeal a Department order must file a letter of protest with the Department within 60 days of "communication" of the order. An order is considered "communicated" to a party within the meaning of RCW 51.52.050 upon receipt. *Rodriguez v. Department of Labor & Indus.,* 85 Wn.2d 949, 952–53, 540 P.2d 1359 (1975). Here, the Department order in question was issued September 9, 1985. All parties agree Kaiser was in receipt of the order by at least September 23, 1985, as indicated by the stamp date on Kaiser's file copy of the Department order. Accordingly, any protest to that order was required to be sent within 60 days of September 23, 1985. Kaiser contends it met this requirement through testimony of office custom in mailing correspondence.

Upon proof of mailing, it is presumed the mail proceeds in due course and the letter is received by the person or entity to whom it is addressed. *Avgerinion v. First Guar. Bank,* 142 Wash. 73, 78, 252 P. 535 (1927). The landmark workers' compensation case which first acknowledged the alternate means of establishing proof of mailing by office custom is *Farrow v. Department of Labor & Indus.,* 179 Wash. 453, 455, 38 P.2d 240 (1934):

---

[2]RCW 51.52.050 provides in relevant part: "Whenever the department has made any order . . . it shall promptly serve the . . . employer . . . with a copy thereof by mail . . . [An order] shall become final within *sixty days from the date the order is communicated to the parties unless a written request for reconsideration [i.e., letter of protest] is filed with the department of labor and industries, Olympia, or an appeal is filed with the board of industrial insurance appeals. Olympia"*. (Italics ours.)

Obviously, in an office handling . . . [a large amount of] corre-spondence . . . no one can remember the fact of mailing any particular notice or letter. So the law has become well estab-lished in such instances that proof of mailing may be made by showing *(a) an office custom with respect to mailing*; [and] *(b) compliance with the custom in the specific instance.*

(Italics ours.) *See also Haugen v. Department of Labor & Indus.*, 183 Wash. 398, 401, 48 P.2d 565 (1935) (*Farrow* applied); *Matsko v. Dally*, 49 Wn.2d 370, 376–77, 301 P.2d 1074 (1956) (*Farrow* test in contract setting); *Lieb v. Webster*, 30 Wn.2d 43, 46–47, 190 P.2d 701 (1948) (*Farrow* test applied to mailing a title insurance policy); *Automat Co. v. Yakima Cy.*, 6 Wn. App. 991, 995, 497 P.2d 617 (1972) (*Farrow* test applied to obtain refund of tax penal-ties). For a thorough discussion of proof of mailing custom nationwide, *see* Annot., *Proof of Mailing by Evidence of Business or Office Custom*, 45 A.L.R.4th 476 (1986).

■ Although Mr. Stuart testified to his own practice of writing and signing letters and placing them in an out bas-ket to be mailed, he was unable to testify as to office rou-tine after they were taken from his basket. He revealed his belief they were mailed, but could not substantiate this fact. Mr. Stuart was unable to name the individual in charge of mailing the letters or the individual who picked up the mail from the office. Kaiser did not offer proof iden-tifying any custom or mailing routine. This could have been done by the person who took the letters from the basket and continued the routine for mail preparation and final mailing. Not having done so, Kaiser's contention must fail. *Farrow.*

Kaiser next asserts *Farrow* has been superseded by ER 406, promulgated after the *Farrow* line of cases. ER 406 provides:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the con-duct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Kaiser cites 5 K. Tegland, Wash. Prac., *Evidence* § 129, at 465–66 (1989), which provides:

> Evidence of the "routine practice" of an organization is relevant to prove the organization acted in conformity with that routine practice on a particular occasion. The rule abandons the requirement, occasionally expressed in earlier opinions, that the evidence be corroborated by evidence that the routine practice was in fact followed on the occasion in question. Under Rule 406, lack of corroboration goes to the weight of the evidence, not its admissibility.

(Footnotes omitted.) Within the same section, K. Tegland references the *Farrow* test and expresses the opinion that evidentiary rule, *sub silentio,* overrules the test:

> The rule makes obsolete the cases holding that proof of mailing requires evidence of both the company's mailing routine and the testimony of the persons involved in handling the particular piece of mail in question. See, e.g., Matsko v. Dally, [*supra*]; Lieb v. Webster, [*supra*]; Farrow v. Department of Labor & Industries, [*supra*].

K. Tegland, at 466 n.2. Whether ER 406 supersedes the 2–prong test of *Farrow* appears to present an issue of first impression in Washington. Upon close examination, we find the contention unconvincing to the present fact pattern.

ER 406 is a rule regarding the *relevancy* of evidence. It was designed to allow the court more discretion in the *admission* of evidence; the case at bar concerns the sufficiency of the evidence, not admissibility. Mr. Kelp does not argue the mailing practice or custom of the company handling Kaiser's self–insurance claims is inadmissible; rather, he contends the evidence is insufficient to raise the presumption of mailing. Thus, application of ER 406 does not affect the outcome of this case. Even if it was determined ER 406 replaces *Farrow,* Kaiser's proof falls short of establishing the complete mailing cycle.

When the author of a letter puts it in his "out" box, there must be additional proof to establish the custom and routine thereafter. Mr. Kelp's conclusory statement that

the office routine was followed is insufficient when he cannot testify to that routine. Other jurisdictions maintain a strict level of proof for establishing the presumption of mailing. The key focus is on the witness' knowledge of the interoffice mailing procedure. This is one setting where it is more important to know the work habits of a support staff than the routine assumed by the boss. *See Peirson–Lathrop Grain Co. v. Barker,* 223 S.W. 941 (Mo. Ct. App. 1920) in which the court found the testimony of an individual writing a confirmation letter and instructing a clerical worker to mail the same was insufficient to establish the mailing routine of the office; the clerical worker's testimony was necessary to establish that he generally and invariably deposits all letters in the mail. *Accord, William Gardam & Son v. Batterson,* 198 N.Y. 175, 91 N.E. 371 (1910); *Haak v. Brost Motors Inc.,* 69 Misc. 2d 820, 331 N.Y.S.2d 329 (1970), *aff'd,* 332 N.Y.S.2d 423, 332 N.Y.S.2d 424 (1972); *see also* Annot., 45 A.L.R.4th 476, 499–502 (1986). Here, Mr. Stuart relies upon his secretary or another office worker to properly prepare, process, and mail his correspondence. Therefore, his testimony in isolation is not sufficient to establish the office mailing routine. There is no evidence any envelopes were prepared, sufficient postage stamps placed thereon, or what happened to the letters after they left Mr. Stuart's "out" basket. The court's findings are supported by substantial evidence and support its conclusions of law. There was no error.

Second, Kaiser contends the court erred in awarding Mr. Kelp attorney fees. Given the uncertain status of the law on this issue, we must rule in the alternative. If *Carnation Co. v. Hill,* 54 Wn. App. 806, 776 P.2d 158, *review granted,* 113 Wn.2d 1028 (1989) is affirmed, Mr. Kelp is not entitled to attorney fees; in that event, the trial court's award is reversed. However, if the Supreme Court reverses our decision in *Carnation,* the trial court's award is affirmed.

The judgment is affirmed on the untimely filing issue; the award of attorney fees will abide the Supreme Court's decision in *Carnation Co. v. Hill, supra.*

GREEN and THOMPSON, JJ., concur.